|   |   |   |
|---|---|---|
| | IN THE UNITED STATES DISTRICT COURT | |
| | FOR THE DISTRICT OF ARIZONA | |

| | | |
|---|---|---|
| United States of America, | ) | CR 10-00161-TUC-FRZ (GEE) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| MOISES TORRES-CASTELANO, | ) | |
| Defendant. | ) | |

The District Court referred this case to the magistrate for hearing on pretrial matters. Hearing on the defendant's Motion to Suppress Statements was held on August 31, 2010. After the government's witness was examined by both sides, the parties reached an agreement that certain statements made by the defendant arresting officer Gonzales were spontaneous and not subject to exclusion pursuant to *Miranda*, while other statements made to Gonzales are excludable. Therefore, as to statements defendant made to officer Gonzales the Motion to Suppress is moot. At the outset of the hearing the parties advised they had agree to have the District Court determine, just before the trial begins, the admissibility of certain statement contained in defendant's A-file because the agent who took those statements now resides in Tampa and will travel to Tucson to testify as the trial.

**CHARGE:**

The indictment charges that on December 29, 2009, the defendant illegally re-entered this

country in violation of 8 U.S.C. §1326(b)(2).

**MOTION TO SUPPRESS STATEMENTS:**

The defendant moved "to suppress all statements made to government agents government [sic] at any time (including statements contained in the A-file) for violation of his 5th Amendment rights based on *Miranda v. Arizona* and on the issue of voluntariness."

*Testimony of Santiago Gonzales*

Gonzales is a deputy with the Santa Cruz County Sheriff's Office. On December 29, 2009, he was patrolling in the area of Rio Rico when another deputy reported over the radio that he had observed two males in dark clothing running east across I-19 from the Union Pacific train yard, an area "well known" for illegal immigrant activity. Gonzales drove to the area west of I-19 corresponding to where the individuals had been seen crossing the highway. He observed two subjects run across a street right in front of his vehicle. He got out of the vehicle and chased the individuals on foot, and eventually caught up with the defendant. Gonzales testified he commanded the defendant, first in English and then in Spanish, to stop and get on the ground; the defendant complied. The other suspect continued to run and was not apprehended. Gonzales handcuffed the defendant, notified his dispatch he had a suspect in custody, and began to walk the defendant the 300-400 feet back to his vehicle.

Gonzalez testified that as soon as he began to put the handcuffs on, the defendant "begged for me to– to let him go, to give him an opportunity, and basically to let him go. He–he told me that he had previously been arrested by Border Patrol and he made the statement that if he were to get caught, he would do I believe it was approximately seven or eight years, that's what he told me." Gonzales stated these statements were made spontaneously by the defendant and were not in response to any questions or remarks by Gonzalez. Gonzalez further stated he did not mention the possibility of deportation to the defendant or otherwise threaten him in any way. Although he had drawn his weapon while chasing the defendant, Gonzales testified that he had holstered the gun once the handcuffs were in place.

1   Once back at the vehicle, Gonzalez patted the defendant down for weapons. When asked
2   about any weapons, the defendant denied having any, but admitted to having a small amount
3   of marijuana in his possession. Gonzales also testified he asked the defendant about the
4   tattoos he had, and the defendant admitted he had gotten them while in prison in the U.S.
5   Another deputy responded to the scene and took custody of the defendant. The latter deputy
6   Mirandized the defendant, who then invoked his rights. Gonzales admitted he himself never
7   Mirandized the defendant during the 40-45 minutes before the other deputy arrived.

8   It should be noted that upon further questioning, Gonzales admitted that the defendant
9   never stated to him that he had illegally entered the country, that he had previously been
10  deported or removed, or that he had previously been convicted of illegal re-entry.

12  **STIPULATION OF PARTIES:**

13  The parties consulted together and after some cross-examination of Gonzales by
14  defense counsel the parties announced they had reached a stipulation: all statements the
15  defendant made to Gonzales between the time he was initially apprehended and taken back
16  to the officer's vehicle were spontaneous and not excludable under *Miranda*. Those
17  spontaneous statements do not include the defendant's response to Gonzales's inquiry so to
18  where he got his tattoos which would be excludable

19  Obviously, this stipulation applies to only statements the defendant may have made to
20  Gonzales as no other agents or officers testified at the Motion to Suppress.

22  **RECOMMENDATION:**

23  In view of the foregoing, the magistrate recommends that the District Court, after its
24  de novo review of the record, and pursuant to the stipulation of the parties, **DENY** the Motion
25  to Suppress as **MOOT IN PART** with regard to statements made to officer Gonzales. Either
26  party may file objection with 14 days after being served with a copy of this Report and
27  Recommendation. If objections are timely filed, the party's right to de novo review may be
28  waived. If objections are filed, the parties should direct them to the District Court **by**

1 | **omitting the magistrate's initials from the caption.**

2 |       This Report and Recommendation is being faxed to all counsel on today's date. The Clerk of the Court is directed to send a copy of this Report and Recommendation to all counsel.

      DATED this 8th day of September, 2010.

_____
Glenda E. Edmonds
United States Magistrate Judge